FEB 04 2014

THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

IN THE MATTER OF THE          )
SEARCH OF TWO WIRELESS        )    Misc No. 14-0118SAG
TELEPHONES (FRINK)            )
                              )

...oooOooo...

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

THOMAS MARTIN, a Special Agent with the Drug Enforcement Administration, being duly sworn, deposes and states:

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in 18 U.S.C. 2516.

2. I have been employed as a Special Agent with the DEA since May 1988. Since becoming an employee of DEA I have participated in numerous investigations regarding the Controlled Substances Act. I have participated in the recovery of substantial quantities of narcotics, paraphernalia, and financial proceeds related to drug activity. I have also participated in numerous surveillance operations of Title 21 U.S.C. violators. I have participated in Title III operations, comprising of surveillance operations, monitoring wire interceptions, and analyzing telephone records. Through my training and experience I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the method of payment for such drugs.

3. This affidavit is submitted in support of a search warrant for two cellular mobile devices:

   a) **silver and white colored Apple brand I-Phone, Model A1387 with serial**

1

**number C39GKOF8DTDD; and**

  b) **a black colored Apple brand I-phone Model A1428 with IMEI number 013426000948416** (International Mobile Equipment Identity).

4. These items are in the possession of DEA agents in Baltimore, MD. Your affiant submits that there is probable cause to believe that these electronic devices contain evidence of possession with intent to distribute cocaine, and conspiracy to distribute cocaine in violation of 21 U.S.C. sections 841 and 846, involving George Sylvester FRINK, Jr, (FRINK) and other unknown co-conspirators. On October 25, 2013, fourteen blocks of compressed white powder that field tested positive for cocaine were seized from a vehicle owned and operated by FRINK. The two phones were seized by DEA agents incident to FRINK's arrest. Therefore, while the DEA might already have all necessary authority to examine the two cell phones, I seek this additional warrant out of an abundance of caution to be certain that an examination of the cell phones will comply with the Fourth Amendment and other applicable laws.

5. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of participation in a conspiracy to distribute heroin in violation of 21 U.S.C. Section 846 is presently located in the above mentioned electronic devices. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in

substance and in part unless otherwise indicated.

6. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7. Based on my training, experience, and research, I know that the two iphones have capabilities that allow it to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. I also know that drug traffickers commonly maintain contact information for coconspirators and also keep photographs on their cell phones.

3

8. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence should be on the cell phones because these devices automatically retain such data.

## BACKGROUND OF THE INVESTIGATION

9. In October and November 2010, DEA agents interviewed a cooperating subject who provided information regarding the drug trafficking activities of George Sylvester FRINK. The cooperating subject (CS1) stated that CS1 had been obtaining kilogram quantities of cocaine, since 2007, from an individual known as Paul ALEXANDER. CS1 identified one of ALEXANDER'S cocaine sources as Charles RANSOM. CS1 stated that RANSOM is originally from Baltimore but moved to California several years ago, and that RANSOM was a cocaine distributor who shipped kilograms of cocaine via FedEx delivery.

10. Your affiant knows that RANSOM was indicted in November 2010 in the Central District of California and charged with Participation in a Conspiracy to Distribute Cocaine in violation of 21 USC Section 846. RANSOM was a fugitive until March 2013, when he was arrested in California. According to the case agent, RANSOM was a member of a cocaine organization that was transporting hundreds of kilograms of cocaine from California to Maryland from 2008 through 2010.

11. CS1 stated that CS1 routinely got kilograms of cocaine from ALEXANDER at a bar called "On the Rocks" on Liberty Road in Randallstown, Maryland. CS1 stated that CS1 sold the cocaine

4

for cash and that some of this cash then was paid to ALEXANDER at the same Liberty Road bar. CS1 stated that ALEXANDER had a cocaine partner named George FRINKS, and that FRINKS would be with ALEXANDER at the meetings at On The Rocks Bar. According to CS1, FRINKS had a financial interest in the bar.

12. Maryland Department of Assessments and Taxation (MDAT) records indicate that on November 18, 2009, a trade name application was filed and approved for the trade name ON THE ROXX. The business is listed with an address of 9036 Liberty Road, Randallstown, MD, and the records identify George FRINK as the "president owner."

13. On October 25, 2013, agents conducted a surveillance of George Sylvester FRINK, Jr. at 11711 Reisterstown Road in Reisterstown, and made the following observations:

- 11:32 AM - FRINK arrived at the residence driving a Mercedes Benz bearing a Maryland interchangeable dealer license plate 2A10440. He got out of the vehicle and entered the residence.

- 1:22 PM – FRINK exited the residence wearing a dark hooded sweatshirt and walked out of view toward Reisterstown Road.

- 1:26 PM – FRINK returned into view carrying a large brown cardboard box to the rear of the Mercedes Benz and appeared to place it into the trunk of the Mercedes Benz. FRINK then entered the residence.

- 1:34 PM – FRINK left the residence, entered the Mercedes Benz, and drove away.

14. Later the same day, agents conducted a surveillance of George Sylvester FRINK, Jr., at 8 Church Lane in Pikesville, and made the following observations:

- 2:41 PM – The Mercedes Benz bearing MD Tag 2A10440 arrived at 8 Church Lane. FRINK got out of the vehicle and opened the gate to the rear parking area. FRINK drove into the enclosed area and closed the gate. FRINK then parked behind the Cadillac Escalade bearing MD Tag 2A10439.
- 2:45 PM – FRINK entered the driver's side of the Cadillac Escalade.
- 2:46 PM – FRINK opened the trunk of the Mercedes Benz and the large brown cardboard box was visible in the trunk. FRINK opened the cardboard box and withdrew an orange

5

colored five-gallon bucket. The bucket appeared to be heavy or weighted. Also in the box were foam packing peanuts. FRINK removed the lid of the five-gallon bucket and withdrew a solid rectangular white object. He placed the white object into the pouch-pocket of his hooded sweatshirt. He put the lid on the five-gallon bucket and closed the truck. FRINK briefly entered the Cadillac Escalade, and then exited the Escalade and crawled under the rear of the vehicle as he appeared to be searching for something.
- 2:54 PM –FRINK entered the Cadillac Escalade and drove off the premises.
- 3:15 PM – FRINK returned to the premises at 8 Church Lane.
- 3:27 PM – FRINK exited the Escalade and approached the Mercedes Benz. FRINK opened the trunk to the Mercedes Benz and removed the orange five-gallon bucket from a cardboard box. Frink then entered the Escalade with the orange five-gallon bucket. For the next several minutes FRINK appeared to make arm movements and lunges toward the center console or center of the vehicle.
- 3:34 PM – FRINK exited the Escalade and entered the Mercedes Benz. The bucket remained in the Escalade. FRINK drove the Mercedes Benz sedan off the premises and out of the area.

15. At approximately 6:00 pm, U.S. Magistrate Judge Susan Gauvey issued a search warrant which authorized the search of a 2007 Cadillac Escalade bearing Maryland interchangeable license plate 2A10439, which was recently being operated by George Sylvester FRINK. The warrant also authorized federal agents to enter the parking lot of 8 Church Lane, Pikesville, MD where the 2007 Cadillac Escalade was parked. Maryland license 2A10439 is registered to GSF ENTERPRISES LLC, which is a business entity owned by George Sylvester FRINK, Jr.

16. At approximately 6:05 pm, agents were conducting surveillance of 8 Church Lane prior to the execution of the search warrant. At this time, agents observed FRINK enter the rear parking lot of 8 Church Lane. FRINK then opened the driver's door of the black Cadillac Escalade that was parked at the rear of the building. FRINK then walked to a nearby dumpster and discarded a brown cardboard box.

17. Shortly thereafter, FRINK entered the 2008 Mercedes Benz bearing Maryland license plate 2A10440, which is an interchangeable dealer tag registered to GSF Enterprises, LLC. As he

6

attempted to leave 8 Church Lane, FRINK was stopped by agents and detained until the search of the 2007 Escalade was conducted. A subsequent search of FRINK'S person resulted in the seizure of the Maryland Motor Vehicles Administration registrations for Maryland dealer license plates 2A10439 and 2A10440. Seized from FRINK'S Mercedes Benz was a **silver and white colored Apple brand I-Phone, Model A1387**; and a **black colored Apple brand I-phone Model A1428**. The rectangular object that FRINK had earlier placed in the pouch-pocket of his hooded sweatshirt was no longer there. There is reason to believe that FRINK delivered that object to a drug co-conspirator. Because telephone calls are frequently a part of such delivery arrangements, there is reason to believe that evidence of such calls are presently on one of the two phones found in the Mercedes. Because I know that drug traffickers routinely make calls on cellular telephones to facilitate their drug activities, there is probable cause to believe that both phones contain evidence of Frink's drug trafficking.

18. At approximately 7:00 pm, a Baltimore County Police Department officer and drug detection canine conducted a scan of the outside of the 2007 Cadillac Escalade and the 2008 Mercedes Benz. The canine signaled a positive alert for the presence of controlled dangerous substances for both the Cadillac Escalade and the Mercedes sedan.

19. Agents then searched the Cadillac Escalade and found a cardboard box in the middle of the second row center passenger area. This box contained an orange colored five-gallon bucket surrounded by bubble wrap and foam packing peanuts. Secreted within the five-gallon bucket were seven rectangular blocks of compressed white powder; packed with fragranced sheets of fabric softener and carbon paper. A similar empty, orange colored, five-gallon bucket was observed in plain view, and recovered from the second row passenger seat. This orange bucket

contained similar carbon paper and fragranced fabric softener dryer sheets as those contained in the bucket containing the seven blocks of compressed white powder. Based on my training and experience, I know that it is common for drug traffickers to use dryer sheets and carbon paper to conceal the smell of drugs.

20. While searching the center console area of the driver's side of the vehicle, agents discovered an electronically activated concealed compartment. Located within this compartment were seven additional rectangular blocks of compressed white powder. Also recovered from the concealed compartment was a white piece of paper with handwritten numbers; commonly known to law enforcement as a "tally sheet" used by drug traffickers to keep track of quantities of controlled substances received and/or distributed.

21. Agents recovered an empty brown cardboard box from the nearby dumpster where FRINK earlier had been seen to discard it. The box recovered contained foam packing peanuts, bubble wrap, and was similar in size and shape to the one recovered from the Cadillac Escalade. This cardboard box was scanned by the Baltimore County Police drug detection canine, which signaled a positive alert for the presence of controlled dangerous substances.

22. One of the compressed blocks of white powder was field tested and resulted in a positive indication for the presence of cocaine. The weight of the fourteen blocks of compressed white powder was approximately fifteen kilograms. Based on my training and experience, I know that this amount of cocaine is possessed with the intent to distribute it.

23. FRINK was subsequently charged via a criminal complaint in the United States District Court of Maryland in violation of Title 21, United States Code, Sections 841, possession with intent to distribute cocaine.

**CONCLUSION**

24. I further know, based upon my training, knowledge, and experience, that drug traffickers commonly utilize cellular mobile devices, like the ones seized from FRINK, to communicate with his customers, sources of supply and other co-conspirators. Indeed, agents reviewing surveillance videos saw FRINK using cellular telephones. Further, I know that cellular mobile devices store information regarding incoming, outgoing, and missed calls to the device.

25. In this instance, I believe there is probable cause to believe that FRINK used the phones in his possession to communicate with co-conspirators. In addition, I know that cellular mobile devices contain internal data banks, which drug traffickers use to store the names and phone numbers of their customers, sources of supply, and other co-conspirators for easy access.

26. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them.

27. Based upon my knowledge, training and experience, and consultations with DEA experts, I know that searching and seizing information from computers and other electronic devices often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment.

28. Based on the foregoing, I respectfully request that this Court issue a search warrant for the contents of the two seized cellular telephones and authorize the search and the seizure of the items described in Attachment A, which constitute fruits, evidence and instrumentalities of violations of 21 U.S.C. Sections 841 and 846, using the search methods outlined in Attachment A.

_____
Thomas O. Martin
Special Agent, Drug Enforcement Administration

Sworn and subscribed before me on this 17th day of January 2014.

_____
Stephanie A. Gallagher
United States Magistrate Judge

THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

14-0118SAG

IN THE MATTER OF THE )
SEARCH OF TWO WIRELESS ) Misc No. _____
TELEPHONES (FRINK) )

...ooo0ooo...

## ATTACHMENT A
## DESCRIPTION OF ITEMS TO BE SEIZED

Any and all call logs of records the telephone number, date, and time of calls made to and from the phone. All stored names and phone numbers in electronic address books or contact catalogs. All notes, documents, records, electronic images, correspondence, text messages, voice mail messages, still photographs and moving video, audio files, calendars, message files, emails, and global positioning system ("GPS") data and related information. The foregoing items must pertain to evidence of a violation of drug trafficking, in violation of 21 U.S.C. Section 841, or participation in a conspiracy to distribute controlled substances in violation of 21 U.S.C. Section 846, or other criminal activity

The search procedure shall include reasonably available techniques that are designed to minimize the chance that the Government investigators conducting the search will view information that is beyond the scope for which probable cause exists. The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

(1) Use of search methodology to conduct an examination of all the data contained in such hardware, software, and/or memory storage to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of

11

individuals, or organizations;

(2) Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

(3) Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

(4) Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine whether their contents fall within the items to be seized as set forth herein.

If, after performing these procedures, the directories, files, or storage areas do not reveal evidence of a violation of drug trafficking, in violation of 21 U.S.C. Section 841, or participation in a conspiracy to distribute controlled substances in violation of 21 U.S.C. Section 846, or other criminal activity, the further search of that particular directory, file or storage area, shall cease.